UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　v.<br><br>CHANH TRINH, et al.,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:17-CR-287 JCM (VCF)<br><br>ORDER |

Presently before the court is Chanh V. Trinh's ("defendant") emergency motion for compassionate release. (ECF No. 100). The United States of America ("the government") filed a response (ECF No. 103), to which defendant replied (ECF No. 104).

**I.　Background**

As relevant to this motion, the court sentenced defendant to 102 months' incarceration on April 10, 2019, for orchestrating a tax-fraud conspiracy. (ECF Nos. 85; 90). While defendant has been incarcerated, the novel strain of coronavirus and COVID-19, the resultant respiratory disease, have run rampant throughout the country and the world. While the court need not reiterate the well-known effects COVID-19 has had on day-to-day life, certain populations are particularly at risk of "severe illness" from the virus: the elderly, asthmatic, immunodeficient, and people with HIV. *See* Center for Disease Control, *People Who Are at Higher Risk for Severe Illness,* (June 9, 2020).[1]

The CDC's list of at-risk persons has expanded, and new studies on COVID-19 vis-à-vis comorbidities continue to be promulgated. *Id.*; *see also*, *e.g.,* Xianxian Zhao, et al., *Incidence,*

---

[1] Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

**James C. Mahan**
**U.S. District Judge**

*clinical characteristics and prognostic factor of patients with COVID-19: a systematic review and meta-analysis* (March 20, 2020);[2] Safiya Richardson, et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area* (April 22, 2020).[3]

Defendant moves this court for compassionate release, arguing that his underlying medical conditions—chronic obstructive pulmonary disease ("COPD"), pulmonary hypertension, high blood pressure, and type two diabetes—make him more susceptible to COVID-19. (ECF No. 100). In his reply brief, defendant indicates he has asthma. (*See generally* ECF No. 104).

While the government acknowledges that defendant has exhausted his administrative remedies, as required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), it argues that the court should deny the motion because, in light of his age, his conditions do not substantially diminish his ability to provide self-care within the environment of a correctional facility. (ECF No. 103 at 4–8, 10–11). The government further argues that the § 3553(a) sentencing factors weight against compassionate release. *Id.* at 11–13.

## II.   Legal Standard

"Even though courts ordinarily have the inherent authority to reconsider its prior orders, such authority does not exist when there is an 'express rule to the contrary.'" *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). One such contrary rule is relevant here: "A court generally may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)). Instead, the court may modify a sentence only when expressly authorized by statute.

The court is expressly authorized to modify a sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). However, courts may consider compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ." *Id.* If a

---

[2] Available at https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1.full.pdf.

[3] Available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

James C. Mahan
U.S. District Judge

- 2 -

defendant wants to file such a motion with the court, he must fully exhaust his administrative remedies before doing so. *Id.* Since the enactment of the First Step Act, a defendant may file a compassionate-release motion if his application to the BOP goes unanswered for thirty days. *Id.*

To be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under USSG § 1B1.13, "extraordinary and compelling reasons" include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.

**III.   Discussion**

The parties agree that defendant has exhausted his administrative remedies. (ECF Nos. 100; 103). The court need only consider whether there are extraordinary and compelling reasons that justify compassionate release. If there are, the court also considers the sentencing factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (allowing the court to order compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable").

Defendant contends his COPD, pulmonary hypertension, high blood pressure, type two diabetes, and asthma[4] constitute medical conditions that, taken together with the COVID-19 pandemic, are extraordinary and compelling reasons that warrant his release. (ECF Nos. 100; 104). First, defendant's COPD—"a chronic inflammatory lung disease that causes obstructed airflow from the lungs"[5]—and asthma fall squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place someone at greater risk of COVID-19. Center for Disease Control, *People Who Are at Higher Risk for Severe Illness,* (June 9, 2020)

---

[4] Defendant notes that his PSR mentions a history of asthma in passing. (ECF No. 104 at 1); (*see also* ECF No. 101 at 23). But defendant did not mention asthma in his initial motion (ECF No. 100) or in his correspondence with the BOP (ECF No. 101 at 5, 6, 9, 11, 17). The court is hesitant to accept the eleventh-hour representation that he has asthma. However, the court need not definitively determine whether defendant is asthmatic for the purposes of the instant motion.

[5] Mayo Foundation for Medical Education and Research, *COPD*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/copd/symptoms-causes/syc-20353679.

**James C. Mahan**
**U.S. District Judge**

- 3 -

(explaining that "[p]eople with chronic lung disease or moderate to severe asthma" are at greater risk). Thus, the health risk created by COVID-19 coupled with his medical conditions constitute extraordinary and compelling reasons for his release.

However, the court must also consider the sentencing factors in § 3553(a). These include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (2)(A), (6).

The court finds that the § 3553(a) factors do not support compassionate release. Defendant has served only 11 months of his 102-month sentence. (ECF No. 103 at 12). Notably, defendant agreed to the 102-month sentence as part of a binding plea agreement. (ECF Nos. 67; 69; 85). The sentence is appropriate to reflect the severity of his fraud scheme, which cost the government in excess of $6 million. And this is not the first fraud scheme. He was previously sentenced to 78 months' incarceration after a half-million-dollar fraud and money laundering scheme in 1994.

Defendant has not even served as much time as his 75-year-old father, who was sentenced to 24 months' incarceration, or his sister, who received an 18-month sentence. Defendant was the leader of the fraud scheme and induced his family's participation, so the sentence correctly reflects his role in the underlying conduct. Releasing him now would fundamentally undermine the purpose of his sentence and create an unwarranted sentence disparity between defendant and his codefendants. Finally, as the government noted, defendant "violated multiple terms of his release from the prior conviction, resulting in the revocation of his supervised release." (ECF No. 103 at 12).

Although the § 3553(a) factors militate against release, defendant's underlying health conditions are concerning to both the court and defendant. In light of the ongoing COVID-19 pandemic and defendant's chronic conditions, temporary release from prison is warranted. However, only "**[t]he Bureau of Prisons may** release a prisoner from the place of his

**James C. Mahan**
**U.S. District Judge**

- 4 -

imprisonment for a limited period . . . ." 18 U.S.C. § 3622 (emphasis added). Thus, the court cannot grant defendant a furlough, but it may recommend that the BOP do so. The court will make such a recommendation rather than release defendant outright.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's emergency motion for compassionate release (ECF No. 100) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the court hereby RECOMMENDS that the BOP, pursuant to 18 U.S.C. § 3622, temporarily release defendant to home confinement during the COVID-19 pandemic.

DATED June 12, 2020.

_____
UNITED STATES DISTRICT JUDGE